UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
------------------------X
☆ OCT 17 2011 ☆

BROOKLYN OFFICE

In the Matter of
WILLIAM LEWIS,

              Petitioner,

    -against-

THE CITY OF NEW YORK, THE NEW YORK CITY POLICE
DEPARTMENT, NEW YORK CITY POLICE
COMMISSIONER RAYMOND W. KELLY,
LIEUTENANT LUAT FRANK SARAYLI, in his individual and
official capacities, LIEUTENANT GERARD LESTER, in his
individual and official capacities, CAPTAIN EDWIN LeSHACK,
in his individual and official capacities, DEPUTY INSPECTOR
DANIEL A. CARIONE, in his individual and official capacities,
CHIEF CAMPISI, in his individual and official capacities,
CAPTAIN MARKOV, in his individual and official capacities,
DETECTIVE VICTOR CRESPO, in his individual and official
capacities, LIEUTENANT PETER SHEEHAN, in his individual
and official capacities, LIEUTENANT SHAWN CHARLSON,
in his individual and official capacities, LIEUTENANT JOSEPH
MURRAY, in his individual and official capacities, JULIE L.
SCHWARTZ, ESQ., in her individual and official capacities,
ADAM SHELDON, ESQ., in his individual and official capacities,
KRISHNA O'NEAL,ESQ.,in her individual and official capacities,
NANCY SLATER, ESQ., in her individual and official capacities,
and JOHN DOE #'s 1-5, in their individual and official capacities.

              Defendants.
------------------------------------------------------------------------X

**VERIFIED**
**COMPLAINT**

CV 11 - 5044

Jury Trial Demanded

WEINSTEIN, J.

POLLAK, M.J

    Plaintiff William Lewis, by his attorneys the Law Offices of Jeffrey Lichtman and
LaSasso Griesmeyer Law Group PLLC, complaining of defendants alleges:

## JURISDICTION AND VENUE

1.  This Court has jurisdiction pursuant to 28 U.S.C. 1331 and 26 U.S.C. 1331 (3) and (4) due to

    Defendant's violations of Section 42 U.S.C. 1983 as well as various provisions of the United

    States Constitution.

2.  Venue is proper in this district under 28 U.S.C. Section 1391, based on the fact that Plaintiff's residence and the place where the unlawful acts complained of herein occurred.

3.  The Court is requested to invoke pendent jurisdiction under 28 U.S.C. 1367(a) with respect to Plaintiff's claims arising under New York State law.

4.  Each and all of the acts of the Defendants herein were done by the Defendants, their servants, agents and/or employees under the color and pretense of the statutes, ordinances, regulations, customs and usages of the State of New York and the City of New York, and under the authority of their offices as officers of the City of New York and State of New York.

## PARTIES

5.  Plaintiff, WILLIAM LEWIS (hereinafter "LEWIS") is a 25 year veteran of the New York City Police Department; is a 49 year old citizen of the United States; and is a resident of the county of Richmond, State of New York.

6.  At all times hereinafter mentioned, CITY OF NEW YORK ("CITY") was/is a municipal body of the State of New York, with the offices of its Law Department at 100 Church Street, New York, New York 10007. Said municipality exists and operates under and by virtue of the laws of the State of New York and operates the defendant NEW YORK CITY POLICE DEPARTMENT (hereinafter "NYPD"), and as such is the public employer of the defendants herein.

7.  At all times hereinafter mentioned, RAYMOND W. KELLY ("KELLY") was/is the Commissioner of the NYPD with an office located at One Police Plaza, New York, New York.

2

8. At all times hereinafter mentioned, LIEUTENANT LUAT FRANK SARAYLI (hereinafter "SARAYLI") was/is a member of the NYPD Internal Affairs Bureau ("IAB") with an office located at 315 Hudson Street, New York, New York 10013.

9. At all times hereinafter mentioned, LIEUTENANT GERARD LESTER (hereinafter "LESTER") was/is a Lieutenant with the NYPD Fleet Services Division with an office located at 53-15 58th Street, Woodside, New York 11377.

10. At all times hereinafter mentioned, CAPTAIN EDWIN LeSHACK (hereinafter "LeSHACK") was/is a Captain with the NYPD with a current address of 2318 Tapestry Court, Toms River, New Jersey.

11. At all times hereinafter mentioned, DEPUTY INSPECTOR DANIEL A. CARIONE (hereinafter "CARIONE") was/is a member of the NYPD Internal Affairs Bureau ("IAB") with an office located at 315 Hudson Street, New York, New York 10013.

12. At all times hereinafter mentioned, CHIEF CAMPISI (hereinafter "CAMPISI") was/is a member of the NYPD Internal Affairs Bureau ("IAB") with an office located at 315 Hudson Street, New York, New York 10013.

13. At all times hereinafter mentioned, CAPTAIN MARKOV (hereinafter "MARKOV") was/is assigned to the NYPD 79th Precinct, which is located at 263 Tompkins Avenue, Brooklyn, New York, 11206.

14. At all times hereinafter mentioned, DETECTIVE VICTOR CRESPO (hereinafter "CRESPO") was/is a member of the NYPD Internal Affairs Bureau ("IAB") with an office located at 315 Hudson Street, New York, New York 10013.

15. At all times hereinafter mentioned, LIEUTENANT PETER SHEEHAN (hereinafter "SHEEHAN") was/is assigned to the NYPD 120th Precinct, which is located at 78 Richmond Terrace, St. George, N.Y. 10301.

16. At all times hereinafter mentioned, LIEUTENANT SHAWN CHARLSON (hereinafter "CHARLSON") was/is a member of the NYPD Internal Affairs Bureau ("IAB") with an office located at 315 Hudson Street, New York, New York 10013.

17. At all times hereinafter mentioned, LIEUTENANT JOSEPH MURRAY (hereinafter "MURRAY") was/is assigned to the PBSI Investigations Unit, which is located at 1 Edgewater plaza, Room 515, Staten Island, NY 10305.

18. At all times hereinafter mentioned, JULIE L. SCHWARTZ, ESQ. (hereinafter "SCHWARTZ") was/is a Member of the NYPD Legal Bureau with an office located at located at 1 Police Plaza, New York, New York.

19. At all times hereinafter mentioned, ADAM SHELDON, ESQ. (hereinafter "SHELDON") was/is a Member of the NYPD Legal Bureau with an office located at located at 1 Police Plaza, New York, New York

20. At all times hereinafter mentioned, KRISHNA O'NEAL, ESQ. (hereinafter "O'NEAL") was/is a Member of the NYPD Legal Bureau with an office located at located at 1 Police Plaza, New York, New York

21. At all times hereinafter mentioned, NANCY SLATER, ESQ. (hereinafter "SLATER") was/is a Member of the NYPD Legal Bureau with an office located at located at 1 Police Plaza, New York, New York

4

22. At all times hereinafter mentioned, the CITY operated the New York City Police Department (hereinafter "NYPD"), a police department as part of and in conjunction with its municipal function.

23. At all times hereinafter mentioned, the CITY maintained, managed and controlled the NYPD.

24. At all times hereinafter mentioned, the CITY, its servants, agents and/or employees employed police officers, and other personnel, to work as representatives of the CITY.

25. At all times hereinafter mentioned, the CITY employed police officers, known herein as SARAYLI, LESTER, LeSHACK, CARIONE, CAMPISI, MARKOV, CRESPO, SHEEHAN, CHARLSON and MURRAY, to work as representatives of the CITY.

26. At all times hereinafter mentioned, the CITY employed attorneys, known herein as, SCHWARTZ, SHELDON, O'NEAL and SLATER, to work as representatives of the CITY.

27. At all times hereinafter mentioned, the CITY had the duty to ensure that the actions, activities and behavior of its said servants, agents, police offices, detectives and/or employees conform to a certain standard of conduct established by law for the protection of others against unreasonable risk of harm.

28. At all times hereinafter mentioned, the CITY had the duty to ensure that its said servants, agents, police officers, detectives and/or employees conduct themselves in such a manner so as not to intentionally, wantonly and/or negligently result in injuries to others, including .

29. At all times hereinafter mentioned, SARAYLI, LESTER, LeSHACK, CARIONE, CAMPISI, MARKOV, CRESPO, SHEEHAN, CHARLSON and MURRAY and JOHN DOES # 1-5, said names being fictitious and presently unknown, were police officers, servants, agents, employees and/or representatives of the CITY.

5

30. At all times hereinafter mentioned, SCHWARTZ, SHELDON, O'NEAL and SLATER, were attorneys, servants, agents, employees and/or representatives of the CITY.

31. At all times hereinafter mentioned, SARAYLI, LESTER, LeSHACK, CARIONE, CAMPISI and MARKOV supervised and controlled CITY police officers, including SHEEHAN, CHARLSON and MURRAY.

32. At all times hereinafter mentioned, KELLY, as NYPD Commissioner employed police officers, known herein as SARAYLI, LESTER, LeSHACK, CARIONE, CAMPISI, MARKOV, CRESPO, SHEEHAN, CHARLSON and MURRAY, to work as representatives of the CITY and NYPD.

33. At all times hereinafter mentioned, KELLY, SARAYLI, LESTER, LeSHACK, CARIONE, CAMPISI and MARKOV had the duty to ensure that the actions, activities and behavior of its said servants, agents, police offices, detectives and/or employees conform to a certain standard of conduct established by law for the protection of others against unreasonable risk of harm.

34. At all times hereinafter mentioned, SARAYLI, LESTER, LeSHACK, CARIONE, CAMPISI and MARKOV had a duty to ensure that its said servants, agents, police officers, detectives and/or employees conduct themselves in such a manner so as not to intentionally, wantonly and/or negligently result in injuries to others, including LEWIS.

## STATEMENT OF FACTS

35. From January 2007 to March 2010, LEWIS was wrongfully investigated, charged and prosecuted by Defendants for NYPD departmental violations and Federal crimes.

6

36. As a result of these false charges and malicious prosecutions, LEWIS was terminated from his position with the NYPD, suffered emotional distress, and suffered damage to his reputation.

The Departmental Prosecution

37. In January 2007, Defendants commenced an investigation of LEWIS for, *inter alia*, the following alleged departmental violations:

a. "Said Sergeant William Lewis, assigned to the 120[th] Precinct, on or about and between January 1, 2006 and March 10, 2008, engaged in conduct prejudicial to the good order, efficiency or discipline of the Department in that he wrongfully employed individuals for the purpose of engaging in business dealings on his behalf with establishments that participated in illegal gambling operations" ("First Charge");

b. "Said Sergeant William Lewis, assigned to the 120[th] Precinct, on or about December 11, 2007, wrongfully and without authorization divulged and discussed official Department business, to wit: said Sergeant divulged to an individual known to the Department that there was an undercover police operation being conducted at a location which was, in fact, under investigation for illegal gambling activity" ("Second Charge"); and,

c. "Said Sergeant William Lewis, assigned to the 120[th] Precinct, on or about June 11, 2007, engaged in conduct prejudicial to the good order, efficiency  or discipline of the Department in that said Sergeant attempted to collect debts from an individual known to the Department on behalf of a third party in an intimidating manner" ("Third Charge"). (Collectively, "the departmental prosecution" or "the departmental charges")

7

38. Defendants commenced a departmental trial based upon the departmental charges on November 14, 2008 and the trial concluded on January 9, 2009 before Martin G. Karopkin, NYPD Deputy Commissioner of Trials ("KAROPKIN").

39. Defendants SCHWARTZ, SHELDON, O'NEAL and SLATER were the attorneys assigned to prosecute LEWIS in the departmental trial.

40. Defendants based the First Charge against LEWIS on alleged contact between LEWIS and Christopher Shaffer ("SHAFFER"), the owner of Beer Goggles Bar & Grill and Bottomley's Tavern.

41. SHAFFER was under investigation by the NYPD for running illegal gambling operations at Beer Goggles and Bottomley's.

42. LEWIS was, and is, the owner of All Platinum Pest Control.

43. SHAFFER contacted LEWIS to retain All Platinum's services.

44. LEWIS referred SHAFFER's business to another pest control company as these bars were located within the jurisdiction of Lewis's precinct.

45. Based solely on this information, and with no no plausible connection between LEWIS and any illegal gambling operation at Beer Goggles or Bottomley's, or knowledge thereof, Defendants prosecuted LEWIS under the First Charge.

46. LEWIS was found not guilty of the First Charge.

47. The Second Charge stemmed from allegations that LEWIS provided SHAFFER with the identity of an undercover officer investigating SHAFFER for alleged illegal gambling operations.

48. To evidence this claim, Defendants produced computer generated summaries of the phone records of both LEWIS and SHAFFER.

8

49. Defendants further alleged that these records showed telephone contact between LEWIS and SHAFFER on December 11, 2007 and December 12, 2007 to support their claim that LEWIS tipped off SHAFFER.

50. However, LEWIS's defense counsel clearly demonstrated that there was no telephone contact between LEWIS and SHAFFER on either December 11, 2007 or December 12, 2007.

51. Confronted with these original records, Defendants had no choice but to acknowledge and stipulate that – contrary to their previous claim – there was no telephone contact between LEWIS and SHAFFER demonstrated by the telephone records.

52. It was determined by KAROPKIN that that the Defendants continued reliance on altered telephone records to prosecute LEWIS was "without basis or merit."

53. LEWIS was found not guilty of the Second Charge.

54. With respect to the Third Charge, Defendants alleged that LEWIS attempted to collect a debt from Liaquat Ali ("ALI") in an abusive and intimidating manner.

55. The basis for this allegation were taped conversations of interviews with Ali.

56. Mr. Ali is the co-owner of Victory Bagel.

57. Defendants alleged that LEWIS entered Victory Bagel on or about June 12, 2007 to collect money on behalf of Richmond Wholesale.

58. At trial, Defendants stated that, "Mr. Ali spent a large part of the interview recounting how he does not want LEWIS to return to his store because he is afraid of him."

59. After reviewing the tapes and the transcripts of the interviews with ALI, the hearing officer determined that ALI never made the statement during his interview that Defendants alleged.

60. LEWIS was found not guilty of the Third Charge.

9

61. Upon information and belief, had Defendants conducted a proper, thorough and objective investigation, it would have been clear that there was no evidence to support the departmental charges against LEWIS.

62. On March 30, 2009, KAROPKIN issued a trial memorandum to KELLY summarizing the proceedings and recommending that LEWIS be found not guilty of these three charges.

63. On October 16, 2009, KELLY signed and approved KAROPKIN's recommendation over objections by the Department Advocate's Office.

64. Upon information and belief, had Defendants conducted a proper, thorough and objective investigation, it would have been obvious to Defendants that there was no evidence to support the departmental prosecution.

65. Upon information and belief, had a proper, thorough and objective investigation been performed, Defendants would have determined that LEWIS had not committed any criminal act or departmental violation.

66. Upon information and belief, LEWIS was being improperly and unjustly targeted by members of the NYPD, including the individually named Defendants.

67. Upon information and belief, the individually named Defendants held a grudge against LEWIS. But for this grudge and Defendants' bad faith acts, Defendants would never have pushed for the baseless departmental charges.

68. Upon information and belief, individual Defendants SARAYLI and CARIONE, the individuals in charge of the investigation(s) of LEWIS, blindly spearheaded these improper investigations of LEWIS, and used these investigations to secure promotions within the NYPD.

10

69. Upon information and belief, the investigations of LEWIS conducted by the Defendants were performed with gross misconduct, bad faith and with no objectivity whatsoever.

70. Upon information and belief, the Defendants were permitted to abuse their power, their positions within the NYPD, and the policies and procedures of the NYPD to further their improper and illegal investigation and prosecution of LEWIS.

71. This misconduct was magnified by Defendants' neglect to: (a) properly investigate the matter; (b) focus on the totality of the evidence; (c) perform a thorough and objective investigation; (d) properly supervise the investigating officers; and (e) have proper policies and safeguards in place to prevent such gross misuse of power and authority.

72. Upon information and belief, during the almost 2-year-period between the initiation of the investigation of LEWIS in January 2007, and the commencement of the departmental trial on November 14, 2008, the Defendants investigated the incident and obtained statements from alleged witnesses.

73. Upon information and belief, during the almost 2-year-period between the initiation of the investigation of LEWIS in January 2007, and the commencement of the departmental trial on November 14, 2008, Defendants learned and acquired notice that phone record evidence and witness testimony was defective, incomplete and unreliable.

The Federal Prosecution

74. From June 22, 2009 to March 18, 2010, Lewis was wrongfully investigated, arrested, charged and prosecuted by Defendants CITY, KELLY, SARAYLI, LESTER, CARIONE, and CAMPISI for the Federal crime of structuring in violation of Title 31 U.S.C. §§ 5324 (a)(3) and 5324 (d)(1), and Title 18 U.S.C. § 3551 et seq. "the structuring charge".

75. On June 22, 2009, LEWIS discovered that ninety thousand dollars ($90,000) was missing from the safe located in his Staten Island home.

76. LEWIS had withdrawn this money from his bank accounts in response to a threat from his ex-wife. The money was not marital property and LEWIS's ex-wife had no valid claim to the funds.

77. After conferring with the bank manager, LEWIS was advised to withdraw this money from the bank. LEWIS then deposited the funds in his safe.

78. Unbeknownst to LEWIS, his fiancé took the money from the safe and hid it as a prank.

79. Upon discovering that the funds were missing, LEWIS called the police to report that his money had been stolen.

80. The NYPD performed an investigation, including the questioning of LEWIS and his fiancé.

81. Upon information and belief, during the course of this investigation, the NYPD and the individual Defendants learned that there was no evidence to support the structuring charge.

82. Even though LEWIS had called to report the theft of money, and the matter was resolved after LEWIS's fiancé explained the situation to Lewis and the NYPD, this matter was referred to the NYPD Internal Affairs Bureau ("IAB") and Defendants KELLY, SARAYLI, LESTER, CARIONE, and CAMPISI.

83. Upon information and belief, after taking over the case IAB performed an investigation into LEWIS, his finances and his bank accounts.

84. Upon information and belief, motivated by bias and animus towards LEWIS, the NYPD and Defendants SARAYLI, LESTER, CARIONE, and CAMPISI fabricated evidence to support the structuring charge and urged the Department of Homeland Security to arrest and prosecute Lewis.

85. On November 3, 2009, at the behest and urging of the NYPD, and Defendants SARAYLI, LESTER, CARIONE, and CAMPISI, LEIWS was arrested by the Department of Homeland Security for structuring.

86. The arresting agent admitted to LEWIS that Homeland Security neither investigated the structuring charge nor spoke to anyone at his bank.  Rather, the agent informed LEWIS that the NYPD Internal Affairs Bureau performed the investigation and referred the case to Homeland Security.

87. In December 2009, the United States Attorney for the Eastern District of the State of New York commenced federal criminal action *United States of America v. William Lewis*, Docket No. 09-CR-00809 ("federal prosecution") based upon the November 3, 2009 arrest of Lewis.

88. The federal indictment charged LEWIS with a baseless structuring charge, to wit, withdrawing a large total sum of money less in increments of less than $10,000 in order to avoid IRS attention.

89. LEWIS retained criminal defense attorneys Eric Franz and Timothy Parlatore (collectively, "defense counsel") to defend him on this baseless charge.

90. On March 9, 2010, LEWIS was terminated from his position with the NYPD.

91. On March 15, 2010, the United States Attorney for the Eastern District of New York commenced a trial against LEWIS on the structuring charge.

92. On March 18, 2010, a jury found LEWIS not guilty of the structuring charge.

93. Upon information and belief, these actions demonstrate that the individually named Defendants played an active role in the arrest and prosecution of Lewis, gave advice and encouragement to the Department of Homeland Security and the U.S. Attorney's Office, procured the arrest of LEWIS to be made, and through these actions showed active, officious

and undue zeal.

94. Upon information and belief, the Defendants would have determined that LEWIS had not committed any criminal act had a proper, thorough and objective investigation been performed.

95. Upon information and belief, the impetus for the arrest, arraignment and prosecution, was an illegal and improper investigation into LEWIS by Defendants SARAYLI, LESTER, CARIONE, and CAMPISI.

96. Upon information and belief, the NYPD and Defendants SARAYLI, LESTER, CARIONE, and CAMPISI pushed this improper arrest and malicious prosecution in order to attempt to justify the termination of LEWIS's employment with the NYPD.

97. Upon information and belief, had Defendants SARAYLI, LESTER, CARIONE, and CAMPISI conducted a proper, thorough and objective investigation it would have been clear that there was no evidence to support a structuring charge or to turn the case over to the Department of Homeland Security.

98. Upon information and belief, LEWIS was being improperly and unjustly targeted by members of the NYPD, including Defendants SARAYLI, LESTER, CARIONE, and CAMPISI.

99. Upon information and belief, Defendants SARAYLI, LESTER, CARIONE, and CAMPISI held a grudge against LEWIS. But for this grudge and Defendants SARAYLI, LESTER, CARIONE, and CAMPISI's bad faith acts, these Defendants would never have encouraged the federal prosecution.

100. Upon information and belief, individual Defendants SARAYLI and CARIONE, the individuals in charge of the investigation(s) of Lewis, vindictively spearheaded these

14

improper investigations of LEWIS, and used these investigations to secure promotions within the NYPD.

101.    Upon information and belief, the investigations of LEWIS conducted by Defendants SARAYLI, LESTER, CARIONE, and CAMPISI were performed with gross misconduct, bad faith and with no objectivity whatsoever.

102.    Upon information and belief, Defendants SARAYLI, LESTER, CARIONE, and CAMPISI were permitted to abuse their power, their positions within the NYPD, and the policies and procedures of the NYPD to further their improper and illegal investigation and prosecution of LEWIS.

103.    This misconduct was magnified by Defendants' neglect to: (a) properly investigate the matter; (b) focus on the totality of the evidence; (c) perform a thorough and objective investigation; (d) properly supervise the investigating officers; and (e) have proper policies and safeguards in place to prevent such gross misuse of power and authority.

104.    Upon information and belief, Defendants investigated LEWIS's report of stolen funds.

105.    Upon information and belief, during the period of time between the investigation of the stolen funds and the commencement of the federal trial, Defendants SARAYLI, LESTER, CARIONE, and CAMPISI learned and acquired notice that no structuring had occurred.

## AS AND FOR A FIRST CAUSE OF ACTION
## 42 U.S.C § 1983 – FALSE ARREST

106.    Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 105, inclusive, as if fully set forth herein.

107.    As described above, the Defendants, fabricated a federal structuring charge against LEWIS, and used this information to improperly urge the Department of Homeland Security and its employees into arresting and arraigning LEWIS.

108.    These actions demonstrate that the CITY, KELLY SARAYLI, LESTER, CARIONE, and CAMPISI played an active role in the arrest of LEWIS, gave advice and encouragement to the Department of Homeland Security, procured the arrest of LEWIS to be made, and through these actions showed active, officious and undue zeal.

109.    Had the CITY performed a proper, thorough and objective investigation, the Defendants would have determined that LEWIS had not committed any crime.

110.    The impetus for the arrest and arraignment of LEWIS were the malicious motives of SARAYLI, LESTER, CARIONE, and CAMPISI and the illegal and improper investigation into LEWIS by the CITY, KELLY, SARAYLI, LESTER, CARIONE, and CAMPISI.

111.    SARAYLI, LESTER, CARIONE, and CAMPISI pushed this improper arrest in order to defame, discredit and punish LEWIS.

112.    Had the CITY, KELLY, SARAYLI, LESTER, CARIONE, and CAMPISI conducted a proper, thorough and objective investigation it would (i) have determined that the evidence did not support a structuring charge and (ii) not have turned the case over the to the Department of Homeland Security.

113.    Had the CITY or KELLY conducted a proper, thorough and objective investigation it would learned that LEWIS was being improperly and unjustly targeted by members of the NYPD, including SARAYLI, LESTER, CARIONE, and CAMPISI.

114.    SARAYLI and CARIONE, vindictively spearheaded this improper investigation and arrest of LEWIS in order to eliminate LEWIS and to secure a personal beneift.

115.    The investigations of LEWIS conducted by the Defendants SARAYLI, LESTER, CARIONE, and CAMPISI were performed with gross misconduct, bad faith and with no objectivity whatsoever.

116.   Defendants SARAYLI, LESTER, CARIONE, and CAMPISI abused their power, their positions within the CITY and the NYPD and the policies and procedures of the CITY and NYPD to further their improper and illegal investigation and arrest of LEWIS.

117.   This misconduct was magnified by the Defendants SARAYLI, LESTER, CARIONE, and CAMPISI's neglect to: (a) properly investigate the matter; (b) focus on the totality of the evidence; (c) perform a thorough and objective investigation; (d) properly supervise the investigating officers; and (e) have proper policies and safeguards in place to prevent such gross misuse of power and authority.

118.   Defendants SARAYLI, LESTER, CARIONE, and CAMPISI investigated LEWIS for structuring.

119.   During the period of time between the initial report of missing money by LEWIS and arrest of LEWIS, Defendants SARAYLI, LESTER, CARIONE, and CAMPISI learned and acquired notice that no crime had been committed by LEWIS.

120.   Defendants SARAYLI, LESTER, CARIONE, and CAMPISI did not have probable cause nor reasonable belief that probable cause existed to arrest LEWIS and seize LEWIS's person.

121.   Without probable cause or any legal right, Defendants SARAYLI, LESTER, CARIONE, and CAMPISI, while acting within the scope of their authority, intentionally, wrongfully, unlawfully and maliciously caused LEWIS to be against his will while he was aware of the confinement.

122.   Defendants SARAYLI, LESTER, CARIONE, and CAMPISI, in causing the arrest and detention of LEWIS without probable cause, or reasonable belief that probable cause existed, abused their power and authority as employees of the CITY and under color of state and/or local law.

17

123.   Upon information and belief, it was the deliberate choice, policy and custom of Defendants CITY, and KELLY to fail to adequately supervise and train their police officers, including SARAYLI, LESTER, CARIONE, and CAMPISI, in a manner to discourage unlawful arrests, causing the Department of Homeland Security to arrest LEWIS without probable cause or a reasonable belief that probable cause existed.

124.   As a result of the above-described deliberate choices, policies and customs, police officers employed by Defendant CITY, including SARAYLI, LESTER, CARIONE, and CAMPISI, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

125.   The above-described deliberate choices, policies and customs demonstrated a deliberate indifference on the part of the policy makers of Defendants CITY and KELLY to the constitutional rights of persons residing and doing business within the CITY, and were the cause of violations of LEWIS's rights alleged herein.

126.   By reason of their acts and omissions, Defendants SARAYLI, LESTER, CARIONE, and CAMPISI, acting under color of state law and within the scope of their authority, in gross and wanton disregard of LEWIS's rights, caused LEWIS to be subjected to an unreasonable seizure in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

127.   As a result of the Defendants conduct, LEWIS has suffered deprivation of liberty and privacy, has been adversely affected in employment, business and in ordinary life's pursuits and, in addition, suffered emotional distress and was caused, permitted and allowed to fear for his safety, suffer humiliation, embarrassment, anxiety and ridicule. LEWIS has suffered

all the disabling mental and emotional symptoms of such injuries, all of which may be permanent and have caused diminution in the quality of LEWIS's life.

128.    In addition, the acts of Defendants were so egregious and reprehensible and were performed in a manner which violated the law and which were so outrageous that it constitutes conduct that no civilized society should be required to tolerate and, in addition to all damages suffered by LEWIS and in addition to all of the measures of relief to which LEWIS may properly be entitled to herein, Defendants should also be required to pay punitive damages to punish them for their reprehensible conduct and to deter them from such conduct in the future, and as an example to others similarly situated.

129.    Plaintiff therefore, pursuant to 42 U.S.C. § 1983, seeks compensatory damages in this cause of action for pain and suffering for the emotional harm inflicted upon LEWIS in the sum of Five Million Dollars, including punitive damages, as well as attorney's fees and all other damages available under the statue upon which this action is predicated.

## AS AND FOR A SECOND CAUSE OF ACTION
## 42 U.S.C § 1983 – MALICIOUS PROSECUTION

130.    Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 129, inclusive, as if fully set forth herein.

131.    As described above, Defendants fabricated departmental violations against LEWIS, and used this information to improperly prosecuting LEWIS.

132.    These actions demonstrate that the all Defendants played an active role in the prosecution of LEWIS, gave advice and encouragement to SCHWARTZ, SHELDON, O'NEAL and SLATER, and through these actions showed active, officious and undue zeal.

133.    Had Defendants SCHWARTZ, SHELDON, O'NEAL and SLATER performed a proper, thorough and objective investigation, they would have determined that LEWIS had not committed any departmental violation.

134.    The impetus for the departmental prosecution of LEWIS were the malicious motives of SARAYLI, LESTER, CARIONE, and CAMPISI and the illegal and improper investigation into LEWIS by the CITY, KELLY, SARAYLI, LESTER, CARIONE, CAMPISI, MARKOV, CRESPO, SHEEHAN, CHARLSON and MURRAY.

135.    SARAYLI, LESTER, CARIONE, and CAMPISI pushed this improper and baseless prosecution in order to defame, discredit and punish LEWIS.

136.    Had the CITY, KELLY, SARAYLI, LESTER, CARIONE, and CAMPISI conducted a proper, thorough and objective investigation it would have determined that the evidence did not support the departmental charges.

137.    Had the CITY, KELLY, SCHWARTZ, SHELDON, O'NEAL or SLATER conducted a proper, thorough and objective investigation it would learned that LEWIS was being improperly and unjustly targeted by members of the NYPD, including SARAYLI, LESTER, CARIONE, and CAMPISI.

138.    SARAYLI and CARIONE, vindictively spearheaded this improper investigation and prosecution of LEWIS in order to eliminate LEWIS and to secure a personal benefit.

139.    The investigations of LEWIS conducted by Defendants SARAYLI, LESTER, CARIONE, CAMPISI, MARKOV, CRESPO, SHEEHAN, CHARLSON and MURRAY were performed with gross misconduct, bad faith and with no objectivity whatsoever.

140.    Defendants SARAYLI, LESTER, CARIONE, and CAMPISI abused their power, their positions within the CITY and the NYPD and the policies and procedures of the CITY and NYPD to further their improper and illegal investigation and prosecution of LEWIS.

141.    This misconduct was magnified by Defendants SARAYLI, LESTER, CARIONE, CAMPISI, MARKOV, CRESPO, SHEEHAN, CHARLSON, MURRAY, SCHWARTZ, SHELDON, O'NEAL and SLATER's neglect to: (a) properly investigate the matter; (b) focus on the totality of the evidence; (c) perform a thorough and objective investigation; (d) properly supervise the investigating officers; and (e) have proper policies and safeguards in place to prevent such gross misuse of power and authority.

142.    Defendants SARAYLI, LESTER, CARIONE, CAMPISI, MARKOV, CRESPO, SHEEHAN, CHARLSON and MURRAY investigated LEWIS for the departmental charges.

143.    During the period of time between the initiation of the investigation of the departmental charges and the prosecution of LEWIS, all Defendants learned and acquired notice that no crime had been committed by LEWIS.

144.    Defendants SARAYLI, LESTER, CARIONE, CAMPISI, MARKOV, CRESPO, SHEEHAN, CHARLSON and MURRAY did not have a reasonable belief that LEWIS had committed the departmental charges.

145.    Without probable cause or any legal right, all Defendants, while acting within the scope of their authority, intentionally, wrongfully, unlawfully and maliciously caused LEWIS to be prosecuted for the departmental charges.

146.    All Defendants, in maliciously causing the prosecution, abused their power and authority as employees of the CITY and under color of state and/or local law.

147.    Upon information and belief, it was the deliberate choice, policy and custom of Defendants CITY and KELLY to fail to adequately supervise and train their police officers and attorneys, including SARAYLI, LESTER, CARIONE, CAMPISI, MARKOV, CRESPO, SHEEHAN, CHARLSON, MURRAY, SCHWARTZ, SHELDON, O'NEAL and SLATER, in a manner to discourage malicious and/or wrongful prosecutions.

148.    As a result of the above-described deliberate choices, policies and customs, police officers employed by Defendant CITY, including SARAYLI, LESTER, CARIONE, CAMPISI, MARKOV, CRESPO, SHEEHAN, CHARLSON, and MURRAY, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

149.    The above-described deliberate choices, policies and customs demonstrated a deliberate indifference on the part of the policy makers of Defendants CITY and KELLY to the constitutional rights of persons residing and doing business within the CITY, and were the cause of violations of LEWIS's rights alleged herein.

150.    By reason of their acts and omissions, Defendants SARAYLI, LESTER, CARIONE, and CAMPISI, acting under color of state law and within the scope of their authority, in gross and wanton disregard of LEWIS's rights, caused LEWIS to be subjected to a malicious prosecution in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

151.    As a result of the Defendants conduct, LEWIS has suffered deprivation of liberty and privacy, has been adversely affected in employment, business and in ordinary life's pursuits and, in addition, suffered emotional distress and was caused, permitted and allowed to fear for his safety, suffer humiliation, embarrassment, anxiety and ridicule. LEWIS has suffered

all the disabling mental and emotional symptoms of such injuries, all of which may be permanent and have caused diminution in the quality of LEWIS's life.

152.    In addition, the acts of Defendants were so egregious and reprehensible and were performed in a manner which violated the law and which were so outrageous that it constitutes conduct that no civilized society should be required to tolerate and, in addition to all damages suffered by LEWIS and in addition to all of the measures of relief to which LEWIS may properly be entitled to herein, Defendants should also be required to pay punitive damages to punish them for their reprehensible conduct and to deter them from such conduct in the future, and as an example to others similarly situated.

153.    Plaintiff therefore, pursuant to 42 U.S.C. § 1983, seeks compensatory damages in this cause of action for pain and suffering for the emotional harm inflicted upon LEWIS in the sum of Five Million Dollars, including punitive damages, as well as attorney's fees and all other damages available under the statue upon which this action is predicated.

## AS AND FOR A THIRD CAUSE OF ACTION
### 42 U.S.C § 1983 – MALICIOUS PROSECUTION

154.    Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 153, inclusive, as if fully set forth herein.

155.    As described above, Defendants SARAYLI, LESTER, CARIONE, and CAMPISI fabricated a federal structuring charge against LEWIS, and used this information to improperly urge the United States Attorney and its employees into prosecuting LEWIS.

156.    These actions demonstrate that the CITY, KELLY, SARAYLI, LESTER, CARIONE, and CAMPISI played an active role in the prosecution of LEWIS, gave advice and encouragement to the Department of Homeland Security, procured the arrest of LEWIS to be made, and through these actions showed active, officious and undue zeal.

157.   Had the CITY performed a proper, thorough and objective investigation, the Defendants would have determined that LEWIS had not committed any crime.

158.   The impetus for the prosecution of LEWIS were the malicious motives of SARAYLI, LESTER, CARIONE, and CAMPISI and the illegal and improper investigation into LEWIS by the CITY, KELLY, SARAYLI, LESTER, CARIONE, and CAMPISI.

159.   SARAYLI, LESTER, CARIONE, and CAMPISI pushed this improper and baseless prosecution in order to defame, discredit and punish LEWIS.

160.   Had the CITY, KELLY, SARAYLI, LESTER, CARIONE, and CAMPISI conducted a proper, thorough and objective investigation it would (i) have determined that the evidence did not support a structuring charge and (ii) not have turned the case over the to the Department of Homeland Security.

161.   Had the CITY or KELLY conducted a proper, thorough and objective investigation it would learned that LEWIS was being improperly and unjustly targeted by members of the NYPD, including SARAYLI, LESTER, CARIONE, and CAMPISI.

162.   SARAYLI and CARIONE, vindictively spearheaded this improper investigation and prosecution of LEWIS in order to eliminate LEWIS and to secure a personal beneift.

163.   The investigations of LEWIS conducted by the Defendants SARAYLI, LESTER, CARIONE, and CAMPISI were performed with gross misconduct, bad faith and with no objectivity whatsoever.

164.   Defendants SARAYLI, LESTER, CARIONE, and CAMPISI abused their power, their positions within the CITY and the NYPD and the policies and procedures of the CITY and NYPD to further their improper and illegal investigation and arrest of LEWIS.

24

165. This misconduct was magnified by the Defendants SARAYLI, LESTER, CARIONE, and CAMPISI's neglect to: (a) properly investigate the matter; (b) focus on the totality of the evidence; (c) perform a thorough and objective investigation; (d) properly supervise the investigating officers; and (e) have proper policies and safeguards in place to prevent such gross misuse of power and authority.

166. Defendants SARAYLI, LESTER, CARIONE, and CAMPISI investigated LEWIS for structuring.

167. During the period of time between the initial report of missing money by LEWIS and arrest of LEWIS, Defendants SARAYLI, LESTER, CARIONE, and CAMPISI learned and acquired notice that no crime had been committed by LEWIS.

168. Defendants SARAYLI, LESTER, CARIONE, and CAMPISI did not a reasonable belief that LEWIS had committed the crime of structuring.

169. Without probable cause or any legal right, Defendants SARAYLI, LESTER, CARIONE, and CAMPISI, while acting within the scope of their authority, intentionally, wrongfully, unlawfully and maliciously caused LEWIS to be prosecuted.

170. Defendants SARAYLI, LESTER, CARIONE, and CAMPISI, in maliciously causing the prosecution, abused their power and authority as employees of the CITY and under color of state and/or local law.

171. Upon information and belief, it was the deliberate choice, policy and custom of Defendants CITY, and KELLY to fail to adequately supervise and train their police officers, including SARAYLI, LESTER, CARIONE, and CAMPISI, in a manner to discourage malicious and/or wrongful prosecutions.

25

172. As a result of the above-described deliberate choices, policies and customs, police officers employed by Defendant CITY, including SARAYLI, LESTER, CARIONE, and CAMPISI, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

173. The above-described deliberate choices, policies and customs demonstrated a deliberate indifference on the part of the policy makers of Defendants CITY and KELLY to the constitutional rights of persons residing and doing business within the CITY, and were the cause of violations of LEWIS's rights alleged herein.

174. By reason of their acts and omissions, Defendants SARAYLI, LESTER, CARIONE, and CAMPISI, acting under color of state law and within the scope of their authority, in gross and wanton disregard of LEWIS's rights, caused LEWIS to be subjected to a malicious prosecution in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

175. As a result of the Defendants conduct, LEWIS has suffered deprivation of liberty and privacy, has been adversely affected in employment, business and in ordinary life's pursuits and, in addition, suffered emotional distress and was caused, permitted and allowed to fear for his safety, suffer humiliation, embarrassment, anxiety and ridicule. LEWIS has suffered all the disabling mental and emotional symptoms of such injuries, all of which may be permanent and have caused diminution in the quality of LEWIS's life.

176. In addition, the acts of Defendants were so egregious and reprehensible and were performed in a manner which violated the law and which were so outrageous that it constitutes conduct that no civilized society should be required to tolerate and, in addition to all damages suffered by LEWIS and in addition to all of the measures of relief to which

26

LEWIS may properly be entitled to herein, Defendants should also be required to pay punitive damages to punish them for their reprehensible conduct and to deter them from such conduct in the future, and as an example to others similarly situated.

177. Plaintiff therefore, pursuant to 42 U.S.C. § 1983, seeks compensatory damages in this cause of action for pain and suffering for the emotional harm inflicted upon LEWIS in the sum of Five Million Dollars, including punitive damages, as well as attorney's fees and all other damages available under the statue upon which this action is predicated.

## AS AND FOR A FOURTH CAUSE OF ACTION
## 42 U.S.C § 1983 – MUNICIPAL VIOLATIONS

178. Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 177, inclusive, as if fully set forth herein.

179. At all times material to this Complaint, Defendants CITY and KELLY had in effect *de facto* policies, practices, customs and usages that condoned and fostered the unconstitutional conduct of all Defendants, and were a direct and proximate cause of the violations, damages and injuries complained of herein.

180. Defendants CITY and KELLY, acting under color of law, and through their employees, servants, agents and designees, have engaged in a course of action and behavior for decades, rising to the level of a policy, custom and systemic condoned practice, which has deprived LEWIS and other individuals similarly situated of rights, privileges and immunities secured by the Constitution and by federal statute, in violation of 42 § U.S.C. § 1983. These actions were and continue to be condoned, adopted and fostered by CITY policy makers, including but not limited to, Defendant KELLY.

181. Defendants SARAYLI, LESTER, CARIONE, and CAMPISI intentionally and knowingly acted under color of law in an attempt to wrongfully, falsely and unlawfully cause

27

LEWIS to be charged and arrested and to further the personal vendettas of SARAYLI, LESTER, CARIONE, and CAMPISI. These wrongful actions were carried out at the urging of SARAYLI, LESTER, CARIONE, and CAMPISI and in large part due to the culture of political favoritism and corruption that has plagued the CITY for decades.

182.    All Defendants intentionally and knowingly acted under color of law in an attempt to wrongfully, falsely and unlawfully cause LEWIS to be charged and prosecuted for departmental violations and to further the personal vendettas of SARAYLI, LESTER, CARIONE, and CAMPISI.  These wrongful actions were carried out at the urging of SARAYLI, LESTER, CARIONE, and CAMPISI and in large part due to the culture of political favoritism and corruption that has plagued the CITY for decades.

183.    Defendants SARAYLI, LESTER, CARIONE, and CAMPISI intentionally and knowingly acted under color of law in an attempt to cause LEWIS to be wrongfully, falsely and unlawfully charged and arrested.   These actions were carried out by the CITY Defendants in large part due to the culture of police misconduct that has plagued the CITY for years, and is exemplified by the NYPD's uneven treatment of police officers who are facing criminal charges.

184.    Defendants CITY and KELLY were aware of the systemic, widespread misconduct of its employees and the practice of its employees using or promising political favors to further their own interests, yet both the CITY and KELLY acted with deliberate indifference by: (a) failing to address remedy or change said systemic practices; (b) ignoring court orders and arbitrations rulings related to said infractions; (c) and by defending the pattern and practice of unlawful acts carried out in furtherance of police misconduct and political favoritism, both against LEWIS and on a wide scale level.

28

185.    Out of deliberate indifference and/or and unofficial custom and policy, defendants CITY and KELLY failed to adequately train or supervise their higher level supervisors, as to the Civil Rights laws and what constitutes a Civil Rights violation.

186.    As a direct and proximate result of said acts, omissions, indifference and custom and policy established by Defendants CITY and KELLY, and by policymakers/decisionmakers SARAYLI, LESTER, CARIONE, and CAMPISI, LEWIS has suffered and continues to suffer diminished employment, loss of income, loss of other employment benefits, and has suffered and continues to suffer distress, humiliation, great expense, embarrassment and damages to his personal and professional reputation.

187.    As a result of Defendants CITY and KELLY's acts, LEWIS has suffered, and is entitled to damages sustained to date and continuing in excess of Fifteen Million Dollars, including of punitive damages, costs and attorney's fees as well as equitable and injunctive relief and any other relief this Court may find just and proper.

## AS AND FOR A FIFTH CAUSE OF ACTION
## 42 U.S.C § 1983 – DEFAMATION (STIGMA PLUS)

188.    Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 187, inclusive, as if fully set forth herein.

189.    Throughout the departmental prosecution and federal prosecution of LEWIS, Defendants uttered statements that LEWIS was associated with organized crime; was a corrupt police officer; and that LEWIS informed alleged organized crime associates of ongoing police investigations.

190.    These statements were, and are, sufficiently derogatory to injure LEWIS's reputation.

191.    These statements are false and have been proven false during the departmental prosecution.

29

192. Defendants knew these statements to be false.

193. These false statements have caused LEWIS to suffer an alteration of his status as a NYPD employee.

194. Further, being identified as a corrupt police officer with associations to organized crime has caused LEWIS's business, All Platinum Pest Control, to lose significant business and revenue.

195. The damage to LEWIS's reputation, the loss of his position with the NYPD, and the loss of business and revenue by All Platinum Pest Control, are all a direct result of Defendants false and malicious statements about LEWIS.

196. By reason of their acts and omissions, Defendants, acting under color of state law and within the scope of their authority, in gross and wanton disregard of LEWIS's rights, caused LEWIS to be defamed in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

197. As a result of the Defendants conduct, LEWIS has suffered deprivation of liberty and privacy, has been adversely affected in employment, business and in ordinary life's pursuits and, in addition, suffered emotional distress and was caused, permitted and allowed to fear for his safety, suffer humiliation, embarrassment, anxiety and ridicule. LEWIS has suffered all the disabling mental and emotional symptoms of such injuries, all of which may be permanent and have caused diminution in the quality of LEWIS's life.

198. In addition, the acts of Defendants were so egregious and reprehensible and were performed in a manner which violated the law and which were so outrageous that it constitutes conduct that no civilized society should be required to tolerate and, in addition to all damages suffered by LEWIS and in addition to all of the measures of relief to which

LEWIS may properly be entitled to herein, Defendants should also be required to pay punitive damages to punish them for their reprehensible conduct and to deter them from such conduct in the future, and as an example to others similarly situated.

199.    Plaintiff therefore, pursuant to 42 U.S.C. § 1983, seeks compensatory damages in this cause of action for pain and suffering for the emotional harm inflicted upon LEWIS in the sum of Ten Million Dollars, including punitive damages, as well as attorney's fees and all other damages available under the statue upon which this action is predicated.

### JURY DEMAND

1.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury of all issues so triable.

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.    On the First Cause of Action in the sum of Five Million Dollars;

B.    On the Second Cause of Action in the sum of Five Million Dollars;

C.    On the Third Cause of Action in the sum of Five Million Dollars;

D.    On the Fourth Cause of Action in the sum of Fifteen Million Dollars;

E.    On the Fifth Cause of Action in the sum of Ten Million Dollars

E.    An award of costs of this action including attorney's fees to the Plaintiff pursuant to 42 U.S.C.§ 1988;

F.    An award for such other and further relief as this Court may deem appropriate.

Dated:      New York, New York
            October 7, 2011

                              LAW OFFICES OF JEFFREY LICHTMAN

                    By:    _____
                           Jeffrey Lichtman, Esq.
                           750 Lexington Avenue, 15 Floor
                           New York, New York 10022
                           (212) 581-1001

                              LASASSO GRIESMEYER LAW GROUP PLLC

                    By:    _____
                           Joseph Anci, Esq.
                           80 Maiden Lane
                           Suite 2205
                           New York, New York 10038
                           (212) 421-6000

## VERIFICATION

STATE OF NEW YORK          )
                           )ss.:
COUNTY OF NEW YORK         )

**WILLIAM LEWIS**, being duly sworn, deposes and says:

I am the Plaintiff in the within proceeding.  I have reviewed the foregoing Verified Complaint and know its contents thereof, which are true to my own knowledge, except as to matters therein stated to be alleged on information and belief, and as to those matters, I believe them to be true.

_____
**WILLIAM LEWIS**

Sworn to before me this
14th day of OCTOBER, 2011

_____
Notary Public

SUZANNE MILANA
Notary Public State of New York
No. 01MI5038176
Qualified in New York County
Certificate filed in New York County
Commission Expires July 16, 2015