UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM LEWIS,<br><br>       Plaintiff,<br><br> – against –<br><br>THE CITY OF NEW YORK, THE NEW YORK CITY POLICE DEPARTMENT, NEW YORK CITY POLICE COMMISSIONER RAYMOND W. KELLY, LIEUTENANT LUAT FRANK SARAYLI, in his individual and official capacities, DEPUTY INSPECTOR DANIEL A. CARIONE, in his individual and official capacities, CHIEF CAMPISI, in his individual and official capacities, CAPTAIN MARKOV, in his individual and official capacities, DETECTIVE VICTOR CRESPO, in his individual and official capacities, LIEUTENANT SHAWN CARLSON, in his individual and official capacities, and JOHN DOE #'S 1-5, in their individual and official capacities,<br><br>       Defendants. | **MEMORANDUM, ORDER, & JUDGMENT**<br><br>11-CV-5044<br><br>FILED<br>IN CLERK'S OFFICE<br>U.S. DISTRICT COURT E.D.N.Y<br><br>★ MAY 0 7 2014 ★<br><br>BROOKLYN OFFICE |

**JACK B. WEINSTEIN, Senior United States District Judge:**

### Table of Contents

I. Introduction ............................................................................................................2
II. Facts ......................................................................................................................2
 A. Departmental Trial .........................................................................................2
 B. Federal Trial ...................................................................................................4
 C. Dismissal ........................................................................................................5
III. Law .......................................................................................................................5
 A. Summary Judgment Standard ........................................................................5
 B. False Arrest Standard .....................................................................................6
 C. Malicious Prosecution Standard ....................................................................6

1



    D.   *Monell* Liability Standard ............................................................................................7

    E.   Stigma-plus Standard ...................................................................................................7

IV.   Application of Law to Facts ................................................................................................8

    A.   False Arrest ..................................................................................................................8

    B.   Malicious Prosecution in Departmental Trial .............................................................9

    C.   Malicious Prosecution in Federal Trial .....................................................................10

    D.   *Monell* Liability ........................................................................................................11

    E.   Stigma-plus ................................................................................................................11

V.   Conclusion ........................................................................................................................13

## I.  Introduction

Plaintiff, a former New York City Police Department ("NYPD") detective, sues the City of New York, the NYPD, and various employees of the Department under 42 U.S.C. § 1983 for: (1) false arrest; (2) malicious prosecution in a departmental trial; (3) malicious prosecution in a federal trial; (4) municipal violations; and (5) defamation with stigma-plus.

He was fired after a quarter century of service, the immediate cause being his arrest by federal authorities for structuring monetary transactions–a charge on which he was acquitted in a jury trial. While seemingly harsh, the result comports with due process in the peculiar circumstances of the case. The complaint is dismissed.

## II.  Facts

### A.  Departmental Trial

From 2004 through 2010, plaintiff was investigated by the NYPD's Internal Affairs Bureau ("IAB") for violations of NYPD Rules and Regulations. Defendant Daniel Crespo and his supervisor, Daniel Carione, were among the group of IAB investigators. *See* Pl.'s Compl. ¶¶ 11, 14, ECF No. 1. After reviewing the results of this investigation, the Department Advocate's

2

Office brought departmental charges against plaintiff. Plaintiff was represented by counsel throughout the proceedings. *Id.* at ¶ 50.

On March 30, 2009, Trial Commissioner Martin Karopkin announced the disposition of charges and recommended a penalty. Plaintiff pleaded guilty to: (1) failing to notify the NYPD of his change of address between 2004 and 2006; (2) engaging in off-duty employment without authorization; (3) owning real estate for rental purposes; and (4) employing individuals for business deals with establishments in his precinct. He was found guilty of: (1) failing to inform the NYPD that he had a relative employed in his precinct; and (2) employing individuals for business deals with establishments that participated in illegal gambling. Finally, he was found not guilty of: (1) divulging an undercover police operation; (2) attempting to collect debts in an intimidating manner; and (3) employing individuals for business deals with establishments in his precinct in conflict with his duties. *See* Nimick Decl. in Supp. of Def. Mot. for Summ. J., Tr. Comm'r's Decision, Ex. E, ECF No. 68.

Trial Commissioner Karopkin characterized the result as follows: "Some of the charges which this Respondent has been found guilty of do constitute serious misconduct but they do not rise to the level of corruption and misuse of authority claimed by the Department." *See* Ex. E. at 199. He recommended that plaintiff be dismissed from the NYPD but that his dismissal be held in abeyance for one year. Police Commissioner Raymond Kelly approved the recommendation on October 16, 2009. *See* Ex. E. Plaintiff did not file an appeal pursuant to Article 78 of the New York Civil Practice Law and Rules. *See* Lewis Dep., Ex. T. at 255:1-17.

On October 22, 2009, plaintiff signed a probationary dismissal memorandum acknowledging that he could be terminated during the period of abeyance without further hearing by order of the police commissioner. *See* Memorandum, Ex. G.

3

## B. Federal Trial

On July 23, 2009, plaintiff filed a report with the NYPD that approximately $90,000 had been stolen from a safe inside his home. *See* Report, Ex. H. This report was forwarded to the IAB because it involved a large sum of money missing from a member of the NYPD. At the IAB, Fuat Sarayli was assigned to investigate. He found that between February 13, 2009 and March 9, 2009, plaintiff made 25 withdrawals of cash. On multiple days, the withdrawals were slightly under $10,000. *See* Ex. J; Ex. K. Sarayli presented this information to Assistant United States Attorney Morris Fodeman and to Shawn Polonet and Christopher Costa at the Immigration and Customs Enforcement ("ICE") division of the Department of Homeland Security ("DHS"). *See* Sarayli Dep., Ex. U at 64:12-66:3, 85:12-86:9, 181:2-11.

Agent Costa investigated the matter for DHS. He conducted his "own investigation separate and apart from Mr. Sarayli or anyone from the NYPD and determined that plaintiff had committed the crime of Structuring . . . ." Costa Aff., Ex. R at ¶ 6. Costa then drafted an arrest warrant application, which included a chart showing that plaintiff made 25 withdrawals of at least $5000 during a period of 25 days. *See* Arrest Warrant, Ex. L. On ten of these days, plaintiff withdrew an amount under $10,000 but at or over $9000. *See id.*

On November 2, 2009, Magistrate Judge Andrew L. Carter issued an arrest warrant for plaintiff based on probable cause for structuring. *See* Arrest Warrant, Ex. L. The next day, plaintiff was arrested by Costa. Ex. R at ¶¶ 12-15. No member of the NYPD assisted in plaintiff's arrest. Ex. R at ¶ 14.

On December 1, 2009, a federal grand jury issued an indictment, charging plaintiff with structuring, in violation of 18 U.S.C. §§ 5313, *et seq. See* Indictment, Ex. N. Plaintiff was tried

4

in the United States District Court in the Eastern District of New York. He was acquitted on March 18, 2010. *See* Acquittal, Ex. Q.

### C. Dismissal

On February 16, 2010, NYPD Chief of Personnel Thomas Dale recommended that plaintiff be terminated from the NYPD. *See* Recommendation, Ex. O. In support of his recommendation, he noted that, while on dismissal probation, plaintiff had: (1) been named in a complaint filed by the U.S. Attorney's Office for structuring; and (2) engaged in off-duty employment without authorization. *Id.* Under the terms of the probationary dismissal letter, the police commissioner was entitled to dismiss plaintiff for these incidents. *See* Memorandum, Ex. G. The recommendation was endorsed by the First Deputy Commissioner, the Assistant Chief, and the First Deputy Commission. Finally, on March 9, 2010, Police Commissioner Kelly approved the recommendation and dismissed plaintiff from the NYPD.

## III. Law

### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986); *see, e.g., Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 5 (2d Cir. 1999). Summary judgment is warranted when after construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Anderson*, 477 U.S. at 247-50, 255.

The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). "Once a movant has demonstrated that no material facts are in dispute, the non-movant must set forth specific facts indicating a genuine issue for trial exists in order to avoid the granting of summary judgment." *Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996). This evidence may not consist of "mere conclusory allegations, speculation, or conjecture." *Id.*

### B. False Arrest Standard

A section 1983 claim for false arrest requires the same elements as a claim for false arrest under New York law. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). "To state a claim for false arrest under New York law, a plaintiff must show that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *See Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003). Probable cause to arrest is a complete defense. *See Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007). "Probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Boyd v. City of New York*, 336 F.3d 72, 75-76 (2d Cir. 2003) (internal quotation marks omitted).

### C. Malicious Prosecution Standard

To establish a claim of malicious prosecution under § 1983, a plaintiff must show that: (1) the defendant initiated a prosecution against the plaintiff; (2) the defendant lacked probable cause to believe the proceeding could succeed; (3) the defendant acted with malice; (4) the prosecution was terminated in the plaintiff's favor; and (5) there was a sufficient post-

arraignment restraint on plaintiff's liberty to implicate his or her Fourth Amendment rights. *See Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000).

The existence of probable cause serves as a complete defense to a claim of malicious prosecution. *See Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). Probable cause to prosecute exists when there are "such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Boyd*, 336 F.3d at 76. "Indictment by a grand jury creates a presumption of probable cause that may *only* be rebutted by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." (internal quotation marks and citation omitted) (emphasis in original). *Savino*, 331 F.3d at 72. Mere conjecture on the part of a plaintiff is insufficient to rebut this presumption. *See id* at 73.

### D. *Monell* Liability Standard

A municipality can be found liable under section 1983 only where the municipality itself causes the constitutional violation at issue. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."). "To hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right. *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (internal quotation marks and bracketing omitted).

### E. Stigma-plus Standard

To establish a § 1983 stigma-plus claim for deprivation of liberty under the Due Process Clause of the Fourteenth Amendment, a loss of reputation must be "coupled with a more tangible

7

interest, such as government employment." *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004). If termination from government employment constitutes the tangible interest, the plaintiff must show that the government made stigmatizing statements about plaintiff that were public and in close temporal proximity to plaintiff's dismissal from government employment. *See Segal v. New York*, 459 F.3d 207, 212 (2d Cir. 2006).

## IV. Application of Law to Facts

### A. False Arrest

Plaintiff's claim for false arrest fails because he was not arrested by any of the defendants and there was probable cause for the arrest. Responsible for the arrest was Agent Costa of DHS. He conducted his own investigation, applied for an arrest warrant, and then arrested plaintiff. The named defendants were not personally involved in the arrest and are not liable for it.

Even if any of the named defendants were responsible for plaintiff's arrest, there was probable cause to arrest. Costa's investigation revealed a pattern of suspicious activity. Over the course of 25 days, plaintiff made 25 cash withdrawals for large sums. Many of these withdraws were just under $10,000 per day, which raised concern that plaintiff was attempting to avoid reporting requirements. *See* Arrest Warrant, Ex. L.

Transactions of large sums of money by public officials are a legitimate source of concern. *See, e.g.,* Jonathan Kandell, *Carmine De Sapio, Political Kingmaker and Last Tammany Hall Boss, Dies at 95*, N.Y. Times, July 28, 2004 (describing an incident in 1957 when De Sapio denied leaving $11,200 in cash in a taxicab). In this case, plaintiff himself reported the missing cash to local law enforcement. The NYPD was obligated to investigate and coordinate with DHS at the appropriate time.

A magistrate judge reasonably determined that there was probable cause and issued a warrant for plaintiff's arrest. *See Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) ("[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.") (internal quotation and citation marks omitted); *Illinois v. Gates*, 462 U.S. 213 ("[O]nly the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.") (internal quotation marks and citation omitted).

Plaintiff claims that Costa arrested him as a "favor" to the IAB. *See* Lewis Dep. at 214, Pl.'s Opp. to Mot. to Summ. J., ECF No. 74-21 at 39. There are no grounds for accepting this speculative theory. In its ongoing efforts to purge itself of corruption, the IAB regularly coordinates with DHS and other federal agencies. *See, e.g.,* U.S. Immigration & Customs Enforcement, *Brothers Arrested in Illegal Arms Export Scheme*, Sept. 6, 2013, http://www.ice.gov/news/releases/1309/130906newyork.htm; U.S. Immigration & Customs Enforcement, ICE Arrests NYPD Officer for Money Laundering Scheme, Feb. 13, 2009, http://www.ice.gov/news/releases/0902/090213newyork.htm; *see generally* The City of New York, Commission to Combat Police Corruption, *Fifteenth Annual Report* (Sept. 2013); Michael Price, Brennan Center for Justice, *National Security and Local Police* (2013). Such cooperation does not imply corruption. Lacking is any indication of bad faith on the part of either local law enforcement or federal agents.

**B.    Malicious Prosecution in Departmental Trial**

Plaintiff alleges that when he was questioned by Captain Carione of the IAB, he was effectively under arrest. Lewis Decl. ¶ 14, Pl.'s Opp. Mot. Summ. J., ECF No. 74-1. This

dramatically mischaracterizes the situation. He was not restrained or otherwise seized; the inquiry by Carione does not rise to the level of a Fourth Amendment concern. *See Washington v. Cnty. of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004) (rejecting a § 1983 malicious prosecution claim when "[p]laintiffs were charged in an *administrative* proceeding, and, critically, were never taken into custody, imprisoned, physically detained or seized within the traditional meaning of the Fourth Amendment.").

### C. Malicious Prosecution in Federal Trial

Plaintiff's claim for malicious prosecution suffers from flaws analogous to his false arrest claim: he was not prosecuted by any of the defendants and there was probable cause for the prosecution. The prosecution was conducted by the United States Attorney's Office. The federal prosecutor presented the case to a grand jury, which issued an indictment charging plaintiff with structuring. The case was then argued by the federal prosecutor.

No member of the NYPD played an "active role in the prosecution," *see Rohman v. New York City Transit Auth.*, 215 F.3d 208, 217 (2d Cir. 2000), or provide false information to the prosecutor, *see Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010). All prosecutorial decisions were made by the United States Attorney's Office.

Even if any of the defendants were responsible for plaintiff's prosecution, there was probable cause to prosecute based on the indictment. *See Wilson v. City of New York*, 480 Fed. Appx. 592, 595 (2d Cir. 2012). Conclusory allegations of wrongdoing do not rebut the presumption of probable cause that arises from the indictment. *See Savino v. City of New York*, 331 F.3d 63, 73 (2d Cir. 2003).

### D. *Monell* Liability

Plaintiff argues that the City has a policy or custom of (1) corruption and political favoritism, and (2) deliberate indifference to his rights. Pl. Compl. ¶¶ 178-187. Even if plaintiff did demonstrate a violation of a constitutional rights–which he did not–the *Monell* claim would fail. Plaintiff has presented no evidence indicating the existence of an official policy or custom sufficient to satisfy the requirements of *Monell*. To the contrary, he argues that he was singled out by a select group of individuals "to further the personal vendettas" they had against him. Pl.'s Compl. ¶ 181. Even if these individuals did improperly target plaintiff, the City would still not be liable because they would not have been acting pursuant to an official policy or custom.

Likewise, deliberate indifference is not demonstrated. "'Deliberate indifference' involves the conscious disregard of the risk that poorly-trained employees will cause deprivations of clearly established constitutional rights." *See Wray v. City of New York*, 490 F.3d 189, 96 (2d Cir. 2007). There is no showing of any defects in the training at the NYPD.

### E. Stigma-plus

Plaintiff argues that he was terminated based on defamatory statements made during his departmental and federal trials that he was corrupt. He fails to point to any specific defamatory statements or show any evidence that defamatory statements led to his dismissal. Instead, plaintiff argues that he was "treated throughout as if he had been guilty of corruption. . . ." *See* Pl.'s Memo in Opp. to Summ. J. 44, ECF No. 78. This allegation is insufficient to establish a claim for defamation. *See Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004).

Assuming that plaintiff challenges statements made during his departmental and federal trials, these statements may not serve as grounds for defamation. "A trial witness has absolute immunity with respect to any claim based on the witness' testimony." *See Rehberg v. Paulk*, 132

11

S. Ct. 1497, 1505 (2012). Absolute immunity encourages witnesses to take the stand and testify truthfully. *See Briscoe v. LaHue*, 460 U.S. 325, 333 (1983). This rationale applies equally to trial courts and to administrative bodies that serve a judicial function. *See Butz v. Economou*, 438 U.S. 478, 512-13 (1978) ("We think that adjudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages."); Rules of the City of New York, Title 38, § 15-01 through 15-08 (describing procedures for NYPD departmental trials). Testimony from police officers–at times provided at great personal risk–has often been essential to uncovering misconduct within the department. *See, e.g., United States v. Eppolito*, 436 F. Supp. 2d 532, 548 (E.D.N.Y. 2006), *rev'd in part*, 543 F.3d 25 (2d Cir. 2008) (summarizing testimony from police officers regarding police officers who worked for the mafia); Corey Kilgannon, *Serpico on Serpico*, N.Y. Times, Jan. 24, 2010, at MB1; *see generally* Paula H. Bucy, *Information as a Commodity in the Regulatory World*, 39 Hous. L. Rev. 905, 940-948 (2002) (discussing the role of inside information in exposing wrongdoing).

Plaintiff also cannot show that he was terminated due to allegedly defamatory statements. His termination was a consequence of indictment by a federal grand jury. *See* Recommendation, Ex. O. Under the terms of the probationary dismissal memorandum, which plaintiff agreed to in writing, this was sufficient cause for termination. *See* Memorandum, Ex. G.

## V. Conclusion

Defendants' motion for summary judgment is granted. No costs or disbursements are awarded.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: May 7, 2014
       Brooklyn, New York